UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDA POWELL,

           Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant.

CASE NO.    C07-5029KLS

ORDER REMANDING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Linda Powell, has brought this matter for judicial review of the denial of her application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-eight years old.[1] Tr. 33. She has a general equivalency diploma and past work experience as a kitchen aide, housekeeper and teacher's aide. Tr. 22, 68, 76, 796.

On August 23, 1995, plaintiff filed an application for disability insurance benefits, which was

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

1  denied initially and on reconsideration. Tr. 21.  An administrative law judge ("ALJ") also found plaintiff
2  not disabled in a decision issued on August 28, 1996. Id.  That decision was upheld by the Appeals
3  Council on January 29, 1998, and by this Court on January 8, 1999. Id.

4  On January 12, 2000, plaintiff filed another application for disability insurance benefits, alleging
5  disability as of August 26, 1996, due to degenerative disc disease, a lumbosacral strain, chronic persistent
6  low back pain, and depression. Tr. 21-22, 58-60, 67.  Her application again was denied initially and on
7  reconsideration. Tr. 33, 35, 37, 45.  A hearing was held before another ALJ on August 28, 2001, at which
8  plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 791-833.  That ALJ
9  issued a decision on February 14, 2002, once more finding plaintiff not disabled. Tr. 443-451.

10  Plaintiff requested review of the ALJ's decision, which the Appeals Council granted on August 8,
11  2003. Tr. 453-55.  Pursuant to the order of the Appeals Council, a second hearing was held before a third
12  ALJ on February 18, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a
13  different vocational expert. Tr. 834-63.  On May 3, 2004, that ALJ issued a decision, determining plaintiff
14  to be not disabled as well, finding specifically in relevant part:

15      (1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;
16
17      (2)    at step two, plaintiff had "severe" impairments consisting of an adjustment disorder and sprains and strains;

18      (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
19
20      (4)    at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded her from performing her past relevant work; and
21
22      (5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

23  Tr. 31-32.  Plaintiff's request for review was denied by the Appeals Council on December 7, 2006, making
24  the ALJ's decision the Commissioner's final decision. Tr. 11; 20 C.F.R. § 404.981.

25  On January 22, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.
26  (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of
27

28      [2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

ORDER
Page - 2

benefits or, in the alternative, for further administrative proceedings for the following reasons:

    (a)      the ALJ erred in finding plaintiff's learning disorder to be not severe;

    (b)      the ALJ erred in assessing plaintiff's residual functional capacity;

    (c)      the ALJ erred in assessing plaintiff's credibility;

    (d)      the ALJ erred in evaluating the lay witness evidence in the record; and

    (e)      the ALJ erred in failing to pose a complete hypothetical question to the vocational expert at the second hearing.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, hereby finds that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff must establish her disability existed on or before the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 1999. Tr. 22. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601. For the reasons set forth below, because it is not clear the ALJ properly found plaintiff to

be not disabled prior to her date last insured, remand to the Commissioner for further consideration of this matter is appropriate.

II.     The ALJ Erred in Evaluating Plaintiff's Learning Disorder

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff's adjustment disorder and sprains and strains to be severe impairments. Tr. 31.  Plaintiff argues the ALJ erred in not finding her learning disorder to be a severe impairment as well.  Defendant argues the objective medical evidence supports the ALJ's finding that plaintiff's learning disorder was not severe.  However, the ALJ never made any such finding.  Indeed, as plaintiff asserts, it appears the ALJ did not even consider that disorder.  The objective medical evidence in the record, furthermore, at the very least is mixed with respect to whether plaintiff has a learning disorder and, if so, whether it is a severe impairment.

Plaintiff was evaluated in early June 1995, but no diagnosis of learning disorder was made. Tr. 167-69.  In late July 1995, she underwent a psychiatric evaluation, in which her intelligence was found intact. Tr. 162.  She was not given a diagnosis of a learning disorder. Id.  Similarly, no indication of the presence of a learning disorder was provided during further psychiatric evaluations conducted in early November 1995, and late August 1997. Tr. 165-66, 171-74.  It appears, however, that psychological testing performed in early January 2000, confirmed an "impression of dyslexic learning disorder,"

resulting in a diagnosis of a reading and spelling disorder. Tr. 209.  Plaintiff further was found to need:

> [V]isual aids/written guidelines to which she can refer, as well as repetitions (sometimes many) of instructions and more than the usual opportunities to ask questions in order to accommodate her learning disability and . . .
>
> . . . may need to alter the pace at which new material is presented to accommodate her learning disability

Tr. 405.

Shortly thereafter, however, Geary Heine, M.D., performed a psychiatric evaluation of plaintiff, in which he found no evidence of a learning disorder. Tr. 247.  In early April, 2000, though, Donna E. Moore, M.D., also diagnosed plaintiff with a learning disability, with poor short-term memory and poor problem-solving skills. Tr. 298.  She recommended plaintiff go for "speech therapy sessions to help her learn better how to utilize her strengths and compensate for her weaknesses." Id.

In early March 2002, Louis C. Saeger, M.D., found that "[b]ecause of her very limited educational background and documented learning impairments," jobs that were appropriate to plaintiff's "aptitudes and education" were "too physically demanding," and she was "not suitable for retraining in a sedentary role." Tr. 503.  Dr. Saeger further found as follows with respect to plaintiff's ability to work:

> I do think that the combination of her physical problems, her ongoing pain, her related activity intolerances, and her learning disabilities and psychological and emotional barriers . . . all taken together leave her in a situation where there is little reasonable medical conclusion that can be reached other than that she needs to be pensioned and should qualify for a Social Security benefit.

Tr. 503-04.  These findings were based on those made by plaintiff's vocational rehabilitation counselor, Carrie Guthrie-Whitlow. See Tr. 404, 503-04.

During an independent medical evaluation performed in mid-May 2002, plaintiff was diagnosed with a "[h]istory of learning disability, unspecified," although her mental status examination was largely unremarkable, no specific limitations were attributed to this diagnosis, and she was not deemed "in need of any psychiatric treatment." Tr. 516-17.  In early August 2002, Guy H. Earle, M.D., wrote a letter in which he concurred with the findings made by Ms. Guthrie-Whitlow and Dr. Saeger. Tr. 620.  As such, there is certainly objective medical evidence indicative of a diagnosed learning disorder, which may have had at least some impact on plaintiff's ability to work.  However, because the ALJ did not appear to consider this evidence in his decision, and because it is not clear the substantial evidence in the record supports a finding of severity, this matter shall be remanded to the Commissioner to make that determination.

III.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> The claimant retains the residual functional capacity to frequently walk and sit; stand in one place occasionally; carry 20 pounds from one table to another; pick up 15 pounds and place on table; avoid bending and stooping by substituting squatting or kneeling and otherwise can perform full range of sedentary and light activities plus retains the mental ability to understand, remember and carry out simple instructions; make simple work-related decisions necessary to function in unskilled work; respond appropriately to supervisors, coworkers and usual work situations and deal with changes in a routine work setting.

Tr. 31. Plaintiff argues the ALJ erred in providing this assessment by failing to include therein a number of mental and physical functional limitations found by various medical opinion sources in the record. Each of those alleged errors shall be dealt with separately.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir., 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Saeger

In late December 1998, Dr. Saeger opined that plaintiff needed to be in a situation that did "not involve prolonged and repetitive posturing in a non-neutral lumbar position," and that did "not involve prolonged uninterrupted walking and standing, or prolonged uninterrupted sitting." Tr. 222-23. In terms of

ORDER
Page - 7

1 specific work-related restrictions, Dr. Saeger further opined that plaintiff needed "to be able to alternate 2 between sitting, standing and walking frequently," and again that she needed a job that did "not put her in 3 a non-neutral position on a frequent repetitive basis." Tr. 223.  Plaintiff argues that the ALJ erred in failing 4 to adopt these limitations.

5 As noted by plaintiff, the ALJ did acknowledge Dr. Saeger's opinion. Tr. 23.  However, contrary to 6 defendant's assertion, the ALJ did not set forth his interpretation thereof, or specifically indicate whether 7 or not he was rejecting it.  This was error.  While it may be, as defendant further asserts, that other 8 objective medical evidence in the record conflicted with Dr. Saeger's opinion, and that the ALJ properly 9 summarized such evidence in his decision (see Tr. 23-25, 27-28), again he did not explain what weight he 10 gave to this evidence as opposed to that from Dr. Saeger.  As such, the Court is left to guess at how the 11 ALJ came to his conclusion.  This the Court will not do.  Accordingly, this matter is remanded to the 12 Commissioner also for the purpose of re-considering Dr. Saeger's opinion and findings.

13 B.     Dr. Grant

14 In late October 2000, Richard E. Grant, M.D., completed a residual physical functional capacity 15 assessment form, in which he opined in relevant part that plaintiff was capable of lifting and/or carrying 10 16 pounds occasionally, and less than 10 pounds frequently. Tr. 352.  Once more, plaintiff argues that while 17 the ALJ acknowledged this finding in part (Tr. 29), he failed to provide any reason for rejecting it.  Again, 18 the Court does not find persuasive defendant's claim that the ALJ expressly rejected these findings by Dr. 19 Grant in favor of other objective medical evidence in the record.

20 Specifically, defendant asserts the ALJ rejected Dr. Grant's findings, instead adopting those made 21 by Margery Greenawalt, a physical therapist, who conducted a physical work performance evaluation at 22 the request of Guy H. Earle, M.D., and who found plaintiff capable of carrying 20 pounds "level to level" 23 and 15 pounds "from knee to waist height." Tr. 428.  Although the ALJ acknowledged these findings as 24 well (Tr. 25), nowhere in his decision did he state he was adopting them over those made by Dr. Grant.  25 Even if the Court were to find by implication that the ALJ had done so, no reason was given as to why the 26 findings of a physical therapist, a non-medical source, were given greater weight than those of a licensed 27 physician. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d).  28 Again, this issue must be remanded to the Commissioner for re-consideration as well.

ORDER
Page - 8

  C. Dr. Regets and Dr. Lewis

  In early March 2000, Charles M. Regets, Ph.D., completed a mental residual functional capacity assessment form, in which he opined in relevant part that plaintiff was moderately limited in her ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday and workweek, perform at a consistent pace, and respond appropriately to changes in the work setting, but only mildly limited in her ability to get along with co-workers or peers. Tr. 252-53. In late October 2000, Janis Lewis, Ph.D., completed the same form, and made the same conclusions, except that she found plaintiff to be moderately limited with respect to her ability to get along with co-workers or peers. Tr. 347-49.

  Plaintiff argues that while the ALJ did mention the findings of Dr. Regets and Dr. Lewis in his decision (Tr. 29), he did not give any reason for rejecting them. Defendant asserts the ALJ adopted some of the findings made by Drs. Regets and Lewis, and resolved the ambiguities contained in that evidence and gave a reasonable interpretation thereof as was his duty to do. The ALJ's decision, however, is devoid of any analysis or evaluation of the findings of Dr. Regets and Dr. Lewis. Again, the Court is left to guess at the thought processes of the ALJ. As such, the ALJ erred here, and the Commissioner on remand shall re-consider the above mental functional limitations found by Drs. Regets and Lewis.

III. The ALJ's Assessment of Plaintiff's Credibility

  Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is

1 malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

2 Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v.

3 Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part because her claim of inability to work due to pain was inconsistent with the objective medical evidence in the record. (Tr. 27-28).  A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues it is improper for the ALJ to discount her pain testimony solely on this basis.  While true, as discussed below, the ALJ provided other reasons for discounting plaintiff's testimony, at least one of which, as explained below, was legitimate. See Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (pain testimony may not be rejected solely because degree of pain alleged is not supported by objective medical evidence); Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).

The ALJ next discounted plaintiff's credibility for the following reason:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  She does the cooking, shopping, light cleaning and laundry as well as some mopping of floors. She watches television for two to three hours a day (Exhibit B5E, testimony).  She drives (Exhibit B40F/1).

Tr. 28.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the ALJ mischaracterized her level of activity, pointing out the record shows that her actual activities of daily living are much more limited. The undersigned agrees. Although plaintiff reported she dusted, did light cleaning in the bathroom and kitchen, and did the laundry periodically during the week, she did so only with assistance. Tr. 91. She further reported doing light grocery shopping only one to two days per month, with her husband doing the larger grocery shopping. Tr. 92. Plaintiff's hearing testimony revealed similarly limited daily activities. See Tr. 810-11; 846-53.

The ALJ also discounted plaintiff's credibility because in March 2000, she "was involved in a job station including working as an office clerk six hours a day, for five days a week," which suggested "a level of vigor and stamina inconvenient with disability." Tr. 28. Plaintiff argues this was an unsuccessful work attempt, which cannot be used to show she is capable of doing substantial gainful activity. Plaintiff also asserts her employer at the time was very accommodating and allowed her to lie down as needed. See Tr. 308. While such a work attempt may not be so used to determine substantial gainful activity at step one of the sequential disability evaluation process, it was not improper for the ALJ to consider that evidence in assessing plaintiff's credibility. Indeed, it appears plaintiff worked at that job station for at least six weeks. Id. As such, the undersigned finds no obvious error here.

Lastly, the ALJ discounted plaintiff's credibility for the following reason:

> There is evidence that the claimant received Worker's Compensation payments and, as of January 16, 2003, she has permanent Worker's Compensation pension of $848 a month (Exhibits B3D-B4D and B7D, testimony), which would provide disincentive to seek out and perform past relevant work or other work within residual functional capacity.

Tr. 28. The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Plaintiff argues that just because she is receiving $848 per month in Worker's Compensation benefits is hardly evidence of secondary gain. Again, the undersigned agrees that without more, the mere receipt of such benefits does not alone establish secondary gain issues.

While there is some evidence in the record of lack of motivation and symptom magnification (See Tr. 133, 147-48, 157, 506, 513-14), the ALJ did not evaluate this evidence or use it as basis for discounting plaintiff's credibility. As discussed above, although the ALJ provided two valid reasons for discounting plaintiff's credibility, the other two were not legitimate. In general, when one or more of the reasons given

for discounting a claimant's credibility are found to be improper, this will not necessarily render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148. Here, however, given that half the reasons the ALJ provided were improper, the issue of plaintiff's credibility shall be remanded to the Commissioner for further consideration as well.

IV. The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

In late August 2001, Carrie Guthrie-Whitlow, plaintiff's vocational rehabilitation counselor, issued a "Vocational Rehabilitation Closing Report." Tr. 400-04. In that report, Ms. Guthrie-Whitlow opined as to plaintiff's remaining barriers to employability:

> Several barriers to employability have been identified. Mrs. Powell is restricted to Sedentary – Light strength work as a result of her industrial [low back] injury. She has a pre-existing learning disability. Throughout the history of her claim, she has been diagnosed with depression. Her depression appears to be related, at least in part, to her industrial injury. She has also been diagnosed with other psychological conditions, including anxiety disorder, dysthymia, hysterical personality disorder, and panic disorder with agoraphobia. It is assumed that these conditions pre-existed her industrial injury. . . . Although Mrs. Powell has been released for sedentary – light strength work, it appears that her pre-existing conditions limit her abilities. Sedentary to light strength jobs typically require general learning, verbal, numerical, and/or spatial aptitudes beyond Mrs. Powell's capabilities. The jobs that are appropriate given her aptitudes appear to be too physically demanding.

Tr. 404. Ms. Guthrie-Whitlow also concluded that due to the effects of plaintiff's industrial injury and "her pre-existing learning disability, aptitudes and psychological condition," she was "not likely to benefit from further vocational services." Id.

Plaintiff argues the ALJ erred by failing to provide any reason for rejecting the opinions contained

ORDER
Page - 12

1  in the above statements.  Defendant counters that the ALJ did properly consider those opinions, but asserts
2  that her opinions were neither particularly relevant to whether plaintiff was disabled, nor consistent with
3  other medical opinion source evidence in the record.  Again, while the opinions of Ms. Guthrie-Whitlow
4  may be inconsistent with such other evidence, this was not a reason provided by the ALJ,  and while the
5  ALJ did mention the report Ms. Guthrie-Whitlow made in his decision (See Tr. 25), no interpretation or
6  analysis of that report or her opinions were given.  This was clear error on the part of the ALJ and requires
7  remand to the Commissioner for re-consideration thereof.

8  V.     The Hypothetical Question the ALJ Posed to the Vocational Expert Was Deficient

9       If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation
10 process the ALJ must show there are a significant number of jobs in the national economy the claimant is
11 able to do.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The
12 ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's
13 Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240
14 F.3d 1157, 1162 (9th Cir. 2000).

15      An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical
16 posed by the ALJ.  Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d
17 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the
18 medical evidence to qualify as substantial evidence.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).
19 Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported
20 by the medical record."  Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from
21 that description those limitations he or she finds do not exist.  Rollins v. Massanari, 261 F.3d 853, 857 (9th
22 Cir. 2001).

23      At the second hearing, the ALJ posed a hypothetical question to the vocational expert containing
24 substantially the same limitations as those included in the assessment of plaintiff's residual functional
25 capacity.  Tr. 856-57.  In response, the vocational expert testified that there were other jobs plaintiff could
26 perform.  Tr. 857-59.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of
27 performing other jobs existing in significant numbers in the national economy.  Tr. 30-32.  Plaintiff argues
28 the hypothetical question the ALJ posed was incomplete, because it failed to include the limitations caused

by her learning disorder, as well as those found by Dr Saeger, Dr. Grant, Dr. Regets, Dr. Lewis, and Ms. Guthrie-Whitlow.  The undersigned agrees that due to the ALJ's errors in evaluating this evidence, it is not clear the hypothetical question contained all of plaintiff's actual limitations.  This too then is another issue for further consideration on remand to the Commissioner.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain as to plaintiff's residual functional capacity, her credibility and her ability to perform other jobs existing in significant numbers in the national economy, remand to the Commissioner for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not disabled.  Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

DATED this 5th day of November, 2007.

Karen L. Strombom
United States Magistrate Judge